# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JEFFREY L. BURKE,**

       **Plaintiff,**

vs.                                                                                              **No.  07cv01082 DJS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff's (Burke's) Motion to Reverse and Remand for a Rehearing with Supporting Memorandum **[Doc. No. 14]**, filed February 25, 2008, and fully briefed on April 22, 2008.  On January 25, 2007, the Commissioner issued a final decision denying Burke's claim for disability insurance benefits and supplemental security income payments.  Pursuant to 42 U.S.C. § 405(g), Burke seeks judicial review of the Social Security Administration's denial of his claim for benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be **DENIED**.

### I.  Factual and Procedural Background

Burke, now forty-four years old (D.O.B. March 24,1964), filed his application for disability insurance benefits and supplemental security income payments on January 10, 2005,  alleging disability since October 15, 2003 (Tr. 279), due to medial meniscus tears of both knees, status post arthroscopic surgeries, and degenerative disc disease of the lumbar spine. Tr. 20.  Burke has a

high school education (Tr. 92) and past relevant work as a carpet and cable installer and construction work (Tr. 24).

On January 25, 2007, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Burke was not disabled as he retained the residual functional capacity (RFC) "to perform sedentary to light work with a sit/stand option." Tr. 21. The ALJ further found Burke was not credible. Tr. 23. Burke filed a Request for Review of the decision by the Appeals Council. On August 2, 2007, the Appeals Council dismissed Burke's request for review. Tr. 8. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Burke seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse and remand, Burke makes the following arguments: (1) the ALJ erred in rejecting Dr. Newman's Medical Source Statement; (2) the hypothetical question posed to the vocational expert (VE) was flawed because it did not address all of his impairments; and (3) the ALJ's credibility determination is not unsupported by substantial evidence and is contrary to law.

## A.  Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility. *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, "and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th 1995) (quotation omitted). The inability to

work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Burke claims the ALJ's credibility finding was "based upon several factors, only one of which was legitimate." Pl.'s Mot. to Reverse at 13. Burke contends the ALJ "cherry picked" the evidence to support his finding and omitted the full context of his testimony. Burke also contends the ALJ improperly relied on his testimony regarding his knee which Burke claims is irrelevant to the issue of his back pain. Next, Burke contends the ALJ "was obligated to ask [him] about his alleged inconsistency at the hearing [regarding his work and school] if she were inclined to rely on it to find him not credible." Pl.'s Mot. to Reverse at 15. Finally, Burke argues the ALJ failed to consider that his "depression may have aggravated his perception of pain." *Id*. at 15.

In her decision, the ALJ found:

> Pursuant to the case law of the Ninth Circuit Court of Appeals, Social Security Rulings 96-3p, 96-4p and 96-7p, and pertinent regulations, the claimant's allegations of the degree of his impairments and limitations are rejected as not credible, for the following clear and convincing reasons: First, the claimant testified that he could stand/walk up to four hours a day and sit up to four hours a day. Second, the claimant testified that he is able to drive a car for up to one hour. Third, with regard to chronic pain, the claimant has some degree of pain but his allegation of an 8 on a 1 to 10 pain scale is exaggerated according to Dr. Russo, the medical expert at the hearing. Fourth, the claimant told Dr. Davidson on March 23, 2004, two months after his arthroscopic knee surgery, that his right knee was nearly "good as new" and he was pleased with his progress (Exhibit 3F/pg 6). With regard to his left knee surgery, he told Dr. .Davidson that he was improving much more rapidly than after his other knee surgery (Exhibit 3F/pg 2). Fifth, Dr. Cunningham reported on May 25, 2005, that the claimant had good range of motion (Exhibit 10F). Sixth, the claimant told Dr. Newman on June 29, 2005, that he was spending more time at work. He had a day job that involved rescuing and caring for abandoned animals, specifically ferrets. He was also getting back into school and studying to be an electronic technician. He was very active for about 16 hours a day. (Exhibit 14F). The undersigned finds that his activities are not the activities of an individual who is too disabled to engage in sedentary to light substantial gainful activity.

Tr. 24. Additionally, the ALJ extensively cited to the medical record in making his credibility determination. Specifically, the ALJ noted Burke's **February 28, 2005** visit to Dr. Newman, a

neurologist. On that day, Dr. Newman noted: "There are some very subtle changes on the EMG testing that would be in keeping with either chronic involvement at the L5, S1 level or perhaps very, very mild subacute changes. There is no electrical indication of significant activity spontaneously at this time." Tr. 184. And, although Dr. Newman's clinical examination indicated Burke had "fairly good quality reflexes at knee, hamstring, and ankles bilaterally," nonetheless, because Burke reported increased pain, Dr. Newman sought authorization to repeat the MRI scan before devising a treatment plan. *Id.* Dr. Newman ordered the MRI. The MRI was performed on **March 5, 2005**. The results indicated as follows:

> **IMPRESSION:**
> 1. Multilevel hypertrophic disc desiccation at the L2-3, L4-5, and L5-S1 levels, greatest at the L5-S1 level with slight straightening of the normal lordotic curvature and subtle levoscoliosis which could reflect <u>mild muscle spasm</u>.
> 2. <u>No frank disc herniation or central stenosis</u>.
> 3. Posterior disc bulging at the L2-3 and L3-4 levels and disc protrusions at the L4-5 and L5-S1 levels which have not changed appreciably in the interim.
> 4. Bilateral neural foraminal narrowing at the L4-5 and L5-S1 levels, greatest at the L5-S1 level <u>but no obvious impression upon the exiting L4 or L5 nerve roots bilaterally</u>.
> 5. <u>Mild bilateral hypertrophy</u> at the L4-5 and L5-S1 levels.

Tr. 185-186 (emphasis added).

On **June 29, 2005**, Burke returned for an evaluation with Dr. Newman and reported the following:

> The patient is spending more time at work. He has a day job that involves rescuing and caring [for] abandoned animals, specifically ferrets. He is also getting back into school and studying to be an electronics technician, so that he is very active for about 16 hours a day and during that time tends to have significant buildup is his pains.

Tr. 252.

On **November 30, 2005**, Burke returned for a repeat neurological assessment with Dr. Newman. Dr. Newman noted, in pertinent part:

6

> **NEUROLOGICAL EXAMINATION:**  <u>The patient has significant limitations in the range of back movement and perhaps moves less than 50% of what I would expect.  He has normal reflexes in upper and lower extremities and normal feeling of vibration at the ankle level</u>.  He is very cautious and careful how he get up out of a chair or on to the examining table, but once erect seems to have fairly straight posture and a fairly stable gait.  Pupils are equal without Horner syndrome.

Tr. 250 (emphasis added).

The ALJ properly relied on the medical evidence, the medical expert's testimony and Burke's statements to Dr. Newman in finding Burke not entirely credible.  School attendance, while not conclusive, may be considered by the Commissioner, along with medical testimony, in determining the right of a claimant to disability payments under the Social Security Act.  *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979)("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in a "substantial gainful activity," but such activities may be considered by the Secretary, along with medical testimony, in determining the right of a claimant to disability payments under the Act.").

Burke's contention that his "knee pain is irrelevant to the issue of his back pain," is without merit.  In completing a Disability Report, Burke listed, *inter alia*, his "status post meniscus repair R knee" as a condition that limited his ability to work.  Tr. 86.  In his Disability Report, Burke noted this condition limited his ability to "travel, sitting, standing and walking."  *Id.*  Thus, in assessing Burke's credibility, the ALJ properly included Burke's statements regarding his knee.

Burke's assertion that the ALJ's credibility finding is suspect because the ALJ failed "to consider that [his] depression may have aggravated his perception of pain" is also without merit.  First, Burke failed to cite to the record to support this claim.  The record indicates Burke reported

he was depressed on May 25, 2006, when he sought treatment at Northwest Medical Center.  Tr. 216.  The attending health care provider noted Burke was experiencing depression secondary to chronic back pain.  However, there is no evidence Burke received treatment for his depression or that Burke sought psychological or psychiatric treatment for his depression after this visit.  In addition, Burke did not mention depression at the administrative hearing.

Based on the record as a whole, the Court finds that the ALJ linked his credibility finding to substantial evidence and will not be disturbed.

### B.   Dr. Newman's Medical Source Statement

Burke contends the ALJ's rejection of Dr. Newman's opinion of disability is contrary to law.  On May 4, 2005, Dr. Newman completed a Medical Source Statement of Ability to do Work-Related Activities (Physical)(MSS).  Tr. 199-201.  Dr. Newman opined Burke could occasionally lift less than 10 pounds and noted he was basing this conclusion on "recent severe back pain – near bed confined" (Tr. 199); opined Burke was limited to less than 2 hours of standing/walking in an 8-hour workday because Burke "[could] not stand erect [without] pain"(Tr. 200); opined Burke was limited to less than 6 hours of sitting in an 8 hour day (*Id.*); and opined Burke could never climb balance, stoop, kneel, crouch, or crawl (Tr. 201).  Dr. Newman also noted the two dates he had evaluated Burke.

Generally, the ALJ must "give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  "Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors  provided in [§] 404.1527.'"  *Watkins v. Barnhart*, 350

F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4). A treating physician's opinion is considered in relation to factors such as its consistency with other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. 20 C.F.R. § 404.1527(d) (1)-(6). If the physician's opinion is "brief, conclusory and unsupported by medical evidence," that opinion may be rejected. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

> In his decision, the ALJ noted:
>
> The opinion of J.D. Newman, M.D., dated May 4, 2005, which indicated that the claimant was limited to less than sedentary work, is given little weight because he only saw the claimant two times with regard to the flare-up of back pain the claimant had beginning in approximately January 2005. His opinion was based on that recent flare-up of severe back pain, which is not established as lasting at that level of severity for 12 months. (Exhibit 8F).

Tr. 23.

The ALJ properly considered the length and nature of the treatment relationship in weighing Dr. Newman's statement that Burke was limited to less than sedentary work. Moreover, Dr. Newman was clear that he was assessing Burke's ability to do work-related activities based on his "recent severe back pain– near bed confined." Tr. 199. Accordingly, the ALJ accorded the proper weight to Dr. Newman's opinion.

Burke contends "[t]he ALJ has misunderstood the duration requirement." Mot. to Reverse at 9. Specifically, Burke contends:

> The second reason the ALJ offered for affording Dr. Newman's opinion "little weight" was because it referred to severe back pain [that] did not last " at that level of severity for 12 months." The ALJ has misunderstood the duration requirement. There is no requirement that the *intensity* of Mr. Burke's pain have lasted more than 12 months, only that the impairment, and the resulting inability to work, have lasted 12 months. Mr. Burke's spinal impairment has existed since at least July 2003, when an MRI indicated moderate degenerative disc disease and some disk bulging. The fact that the intensity of the pain waxes and wanes is relevant to whether Mr. Burke can sustain employment, not with respect to whether the impairment *exists*.

Mot. to Reverse at 9 (internal citations and citations to record omitted).

"'[T]he operative question for disability benefits under the Act is whether [p]laintiff experiences functional limitations due to [his] impairments." *Gardner-Renfro v. Apfel,* No. 00-6077, 2000 WL 1846220, at *3 (10th Cir. Dec. 18, 2000)(unpublished). Regardless of whether Burke's spinal impairment existed since July 2003, it is the functional limitations that stem from his spinal impairment that the ALJ must consider. In this case, Dr. Newman was clear in his May 4, 2005 MSS that Burke's functional limitations were due to "recent severe pain– near bed confined." Dr. Newman also made clear that he had only seen Burke on January 24, and February 28, 2005. Based on this information, the ALJ afforded Dr. Newman's MSS the proper weight.

Burke also challenges the ALJ's reliance on the testimony of the medical expert to find him not disabled. Burke contends "[t]he ALJ failed to offer an adequate explanation for finding Dr. Russo's testimony to be more credible than the evidence from the treating physician." Mot. to Reverse at 10. Vincent Russo, M.D., testified as an expert at the administrative hearing. In his decision, the ALJ stated:

> As for the opinion evidence, the opinion of Dr. Russo, the medical expert at the hearing, with regard to the claimant's residual functional capacity, which indicates that he could do sedentary to light work, is given significant weight because it is consistent with the evidence as a whole. Dr. Russo testified that the claimant had chronic pain syndrome, but there was no herniation, stenosis, or extrusion of the nerves. Nerve conduction study was normal. An

> MRI showed no nerve damage and the claimant should be able to build strength. Also, he had excellent results from the arthroscopic knee surgeries he and, and it takes only six to eight weeks to recover from this type of surgery. Dr. Russo said that with a sit/stand option, the claimant could keep up a 40 hour work week pace on a regular and continuing basis. Dr. Russo was of the opinion that an 8 on a 1-10 pain scale was exaggerated.

Tr. 23. As Burke points out, Dr. Russo reviewed the medical evidence. However, Burke does not challenge Dr. Russo's testimony regarding the evidence or point out any conflicting evidence. The ALJ adequately supported his reason for the weight accorded to Dr. Russo's testimony and opinion.

## C. Vocational Expert Testimony

Burke contends the ALJ properly relied on the VE testimony to meet her burden at step five of the sequential evaluation process but erred in not accurately reflecting all of his impairments. Burke takes issue with the ALJ including in his hypothetical question to the VE that he could perform no "excessive bending." Burke contends that "bending" is not a function addressed vocationally and thus the ALJ's reference to "no excessive bending" in his hypothetical is legally insufficient. Nonetheless, Burke concedes that stooping is defined as "bending the body forward and downward." Mot. to Reverse at 12 (citing Webster's Ninth New Collegiate Dictionary).

Hypothetical questions to a VE need only include impairments which are supported by substantial evidence. *Ehrhart v. Secretary of Health & Human Servs.,* 969 F.2d 534, 540 (7th Cir. 1992) (cited in *Anderson v. Shalala,* No. 00-6077, 1993 WL 261905, at *2 (10th Cir. July 11, 1993)(unpublished). "'Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the

[Commissioner's] decision.'" *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)(quoting *Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir. 1990).

The Commissioner counters that there is no discernable distinction between stooping and bending and that either would involve use of the lumbar spine and knees.  The Court agrees.  A broad Westlaw search brings up numerous cases where the term "bending" is used in residual functional capacity assessments.

### D.  Conclusion

It is not this Court's role on appeal to reweigh the evidence or to substitute its judgment for that of the Commissioner.  *See Hargis*, 945 F.2d  at 1486.   The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  Thus, in light of the narrow scope of the Court's review, the Court is satisfied that substantial evidence supports the ALJ's finding that Burke was capable of performing a significant number of jobs in the regional and national economies during the relevant period and was therefore not disabled within the meaning of the Social Security Act.  Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**